10-4197-cv
In re September 11 Litigation

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2012

(Submitted: July 12, 2013     Decided: May 2, 2014)

Docket No. 10-4197

- - - - - - - - - - - - - - - - - - - -x

IN RE SEPTEMBER 11 LITIGATION:

Cedar & Washington Associates, LLC,

Plaintiff-Appellant,

- v.-

The Port Authority of New York and New Jersey, Silverstein Properties, Inc., World Trade Center Properties LLC, Silverstein WTC Management Co. LLC, 1 World Trade Center LLC, 2 World Trade Center LLC, 3 World Trade Center LLC, 4 World Trade Center LLC, 7 World Trade Company, L.P., HMH WTC, Inc., Host Hotels and Resorts, Inc., Westfield WTC LLC, Westfield Corporation, Inc., Consolidated Edison Company of New York, AMR Corporation, American Airlines, Inc., UAL Corporation, and United Airlines, Inc.

Defendants-Appellees.

- - - - - - - - - - - - - - - - - - - -x

Before:        JACOBS, CABRANES, and LIVINGSTON, Circuit Judges.

Cedar & Washington Associates, LLC, appeals from a judgment of the United States District Court for the Southern District of New York (Hellerstein, J.), dismissing its CERCLA indemnity claim for remediation costs it incurred as owner of a building contaminated by toxic dust from the September 11, 2001 attack on the World Trade Center. Because the attack constituted an "act of war" for which CERCLA provides an affirmative defense, we affirm.

SARI E. KOLATCH (Jay B. Spievack, Kara Gorycki, Cohen Tauber Spievack & Wagner P.C., New York, N.Y., Robert D. Fox, Neil Witkes, Manko, Gold, Katcher & Fox LLP, Bala Cynwyd, PA, *on the brief*), Cohen Tauber Spievack & Wagner, P.C., New York, N.Y., for Appellant.

LEAH W. SEARS (Beth D. Jacob, Judith S. Roth, *on the brief*), Schiff Hardin LLP, New York, N.Y., for Appellee The Port Authority of New York and New Jersey.

Richard Williamson, Thomas A. Egan, Flemming Zulack Williamson Zauderer LLP, New York, N.Y., for Appellees Silverstein Properties, Inc., et al.

Christopher Walsh, Paul M. Hauge, Gibbons P.C., Newark, N.J., for Appellees Host Hotels and Resorts, Inc. & HMH WTC, LLC.

PETER L. WINIK, Latham & Watkins LLP, Washington, D.C., for Appellees Westfield WTC LLC & Westfield Corp., Inc.

Charles F. Rysavy, Dawn M. Monsen, K&L Gates LLP, Newark, N.J., for Appellee Consolidated Edison Co. of New York, Inc.

MAURA K. MONAGHAN (Roger E. Podesta, Debevoise & Plimpton, New York, N.Y., Desmond T. Barry, Jr., Condon & Forsyth LLP, New York, N.Y.), Debevoise & Plimpton, New York, N.Y., for Appellees American Airlines, Inc. & AMR Corp.

Jeffrey J. Ellis, Quirk and Bakalor, P.C., New York, N.Y., Michael R. Feagley, Mayer Brown, LLP, Chicago, Ill., for Appellees United Air Lines, Inc. & United Continental Holdings, Inc.

DENNIS JACOBS, Circuit Judge:

Real estate developer Cedar & Washington Associates, LLC, sues the owners and lessees of the World Trade Center (and the owners of the airplanes that crashed into it) under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601-9675, seeking recovery of costs incurred in remediating a nearby building contaminated by the September 11, 2001 attack on the World Trade Center. The case returns to us after a remand to the

3

district court to determine in the first instance whether the defendants are insulated by CERCLA's "act of war" defense. On remand, the United States District Court for the Southern District of New York (Hellerstein, J.) concluded that the attack constituted an "act of war" for purposes of CERCLA's affirmative defense, and that the defendants therefore were entitled to judgment on the pleadings.

We agree. Although CERCLA's strict liability scheme casts a wide net, an "act of war" defense avoids ensnarement of persons who bear no responsibility for the release of harmful substances. The attacks come within this defense. As the "act of war" defense shows, CERCLA was not intended to create liability for the dispersal of debris and wreckage from a catastrophe that was indistinguishable from military attack in purpose, scale, means, and effect. Both the President and Congress responded to the September 11 attacks by labeling them acts of war, and this classification warrants notice, and perhaps some deference, in the CERCLA context. The decisive point is that the attacks directly and immediately caused the release, and were the "sole cause" of the release because the attacks "overwhelm[ed] and

4

swamp[ed] the contributions of the defendant[s]." In re September 11 Litigation, 931 F. Supp. 2d 496, 512 (S.D.N.Y. 2013) (quoting William H. Rodgers, Jr., Environmental Law: Hazardous Wastes and Substances § 8.13 (1992)).

**BACKGROUND**

After the September 11, 2001 attacks that leveled the World Trade Center ("September 11 attacks"), real estate developer Cedar & Washington began renovating its leased 12-story downtown office building into a 19-story business hotel. In late 2004, the New York State Department of Environmental Conservation and the United States Environmental Protection Agency notified Cedar & Washington that the interstitial spaces of the building might contain finely-ground substances from the World Trade Center, including concrete, asbestos, silicon, fiberglass, benzene, lead, and mercury: so-called "WTC Dust." To permit renovation to continue, the government agencies required Cedar & Washington to perform costly remediation. In this suit, Cedar & Washington seeks to recover those costs from: the owner of the World Trade Center site, lessees of World Trade Center buildings, and the companies that owned the two

aircraft that were crashed into the towers.

The claims are premised on CERCLA and common-law indemnification.  The district court initially dismissed the complaint on statute of limitations grounds and (alternatively) on the ground that Cedar & Washington failed to allege a necessary element of a CERCLA cost recovery claim: either a "release" or a "disposal" of hazardous substances.  In re September 11 Litigation, No. 08-9146 (AKH), 2010 WL 9474432 (S.D.N.Y. Sept. 22, 2010) (citing 42 U.S.C. § 9607(a)(1)-(2)).  On appeal, we declined to resolve these "thorny questions of statutory interpretation"; instead, we remanded under United States v. Jacobson, 15 F.3d 19, 22 (2d Cir. 1994), for the district court to determine, in the first instance, whether the defendants could invoke CERCLA's "act of war" defense.  In re September 11 Litigation, 485 F. App'x 443 (2d Cir. 2012).  This affirmative defense requires the alleged polluter to prove by a preponderance of evidence that the release of a hazardous substance was caused "solely by . . . an act of war."  42 U.S.C. § 9607(b).

Pursuant to our mandate, the district court ordered briefing and heard argument, and then held, in a March 20,

2013 opinion, that Cedar & Washington's claim could be dismissed on this alternative ground (in addition to those identified in its earlier opinion). In re September 11 Litigation, 931 F. Supp. 2d 496 (S.D.N.Y. 2013). The district court emphasized that:

- the attacks were "unique in our history," id. at 509;

- al-Qaeda's leadership "declared war on the United States, and organized a sophisticated, coordinated, and well-financed set of attacks intended to bring down the leading commercial and political institutions of the United States," id.;

- "Congress and the President responded by recognizing al-Qaeda's attacks as an act of war" and sent U.S. troops "to wage war against those who perpetrated the attacks and the collaborating Taliban government," id.; and

- the Supreme Court clarified in Hamdi v. Rumsfeld, 542 U.S. 507 (2004), and Hamdan v. Rumsfeld, 548 U.S. 557 (2006), that the attacks "were acts of war against the United States." In re September 11 Litigation, 931 F. Supp. 2d at 512.[1]

---

[1] These facts are subject to judicial notice under Federal Rule of Evidence 201(b) because they are "not

7

Further, the district court held that this "act of war" was the sole cause of any release of hazardous substances from the World Trade Center's collapse because the September 11 attacks "overwhelm[ed] and swamp[ed] the contributions of the defendant[s]." Id. (quoting Rodgers, supra, at § 8.13).

The district court cautioned that its "holding as to the act-of-war defense should be read narrowly, fitting the facts of this case only." Id. at 514. Its decision was not necessarily applicable in contexts presenting different considerations, such as "cognate laws of insurance" or the Anti-Terrorism Act of 1992. Id.

Once the district court issued its opinion, Cedar & Washington promptly notified this Court to restore jurisdiction, and the appeal was reinstated.

## DISCUSSION

The district court's decision that the September 11 attacks constitute an "act of war" under CERCLA, and that those attacks were the sole cause of the release of WTC

---

subject to reasonable dispute," are "generally known within the trial court's territorial jurisdiction," and "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned [here, the 9/11 Commission Report]."

dust, is reviewed de novo.  Hayden v. Paterson, 594 F.3d 150, 160 (2d Cir. 2010) (grant of a motion for judgment on the pleading accorded de novo review).  We accept as true all well-pled allegations and draw all reasonable inferences in Cedar & Washington's favor.  Burnette v. Carothers, 192 F.3d 52, 56 (2d Cir. 1999) ("In deciding a Rule 12(c) motion, we apply the same standard as . . . under Rule 12(b)(6), accepting the allegations contained in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party.").

**I**

CERCLA imposes strict liability for hazardous waste cleanup on owners and facility operators, on certain persons who arrange for the disposal or treatment of hazardous waste, and on certain persons who transport hazardous waste. 42 U.S.C. § 9607(a)(1)-(4).  Three affirmative defenses are made available when CERCLA liability would not be linked to responsibility for contamination.  These defenses are listed in Section 107(b):

> There shall be no liability under [CERCLA] for a person otherwise liable who can establish by a preponderance of the evidence that the release or threat of release of a hazardous substance and the damages resulting

therefrom were caused solely by--

(1) an act of God;

(2) *an act of war;*

(3) an act or omission of a[n unrelated] third party . . . ; or

(4) any combination of the foregoing paragraphs.

42 U.S.C. § 9607(b) (emphasis added).

"Act of war" is undefined in the statutory text, and the legislative history is silent on the intended meaning of the term.  United States v. Shell Oil, Co., 294 F.3d 1045, 1061 (9th Cir. 2002).  To construe it, we "consider not only the bare meaning of the . . . phrase but also its placement and purpose in the statutory scheme."  United States v. Robinson, 702 F.3d 22, 31 (2d Cir. 2012) (quoting Holloway v. United States, 526 U.S. 1, 6 (1999) (internal quotation marks omitted)).

There is no doubt that CERLCA commands a broad reading, and that, accordingly, its several exceptions (including "act of war") are generally read narrowly.  See Gen. Elec. Co. v. AAMCO Transmissions, Inc., 962 F.2d 281, 285 (2d Cir. 1992) ("It was Congress' intent that CERCLA be construed liberally . . . .");  see also Shell Oil, 294 F.3d at 1061-62 (denying "act of war" defense to oil companies who released

10

hazardous substances during wartime at the government's direction); <u>Westfarm Assocs. Ltd. P'ship v. Washington Suburban Sanitary Comm'n</u>, 66 F.3d 669, 677 (4th Cir. 1995) (noting CERCLA's "narrow defenses for damages caused solely by act of God, war, or third parties").

However, the reason for that rule of construction is to "accomplish [CERCLA's remedial] goals." <u>Gen. Elec.</u>, 962 F.2d at 285. CERCLA was passed "to ensure that those responsible for any damage, environmental harm, or injury from chemical poisons bear the costs of their actions."[2] <u>Id.</u> (internal quotation marks omitted); <u>see also</u> <u>Burlington N. & Santa Fe Ry. Co. v. United States</u>, 556 U.S. 599, 602 (2009) ("The Act was designed to promote the timely cleanup of hazardous waste sites and to ensure that the costs of such cleanup were borne by those responsible for the contamination." (internal quotation marks omitted)).

That purpose, however broad, is not advanced here by imposing CERCLA liability on the airlines and the owners

---

[2] "CERCLA's primary purposes are axiomatic: (1) to encourage the timely cleanup of hazardous waste sites; and (2) to place the cost of that cleanup on those responsible for creating or maintaining the hazardous condition." <u>Price Trucking Corp. v. Norampac Indus., Inc.</u>, --F.3d--, No. 11-2917-cv, 2014 WL 1012835, at *3 (2d Cir. Mar. 18, 2014) (internal quotation marks omitted).

11

(and lessors) of the real estate. And the manifest purpose of the defense is served by recognizing the September 11 attacks as acts of war. The attacks wrested from the defendants all control over the planes and the buildings, obviated any precautions or prudent measures defendants might have taken to prevent contamination, and located sole responsibility for the event and the environmental consequences on fanatics whose acts the defendants were not bound by CERCLA to anticipate or prevent. See, e.g., 2 The Law of Hazardous Waste: Management, Cleanup, Liability and Litigation § 14.01[8][b] (Susan M. Cooke, ed.) (delineating CERCLA's act-of-war defense as covering "man-made catastrophes beyond the control of any responsible party"). We therefore conclude that, solely for purposes of construing CERCLA's affirmative defenses, the September 11 attacks were acts of war.[3]

This contextual reading comports with the plain meaning of "act of war" notwithstanding that the September 11

---

[3] Cedar & Washington contend that the September 11 attacks are more appropriately covered by the "third-party" affirmative defense, but that discovery would be required for defendants to meet their burden on that defense. See Appellant Br. 15 n.9. Because the claims are barred by the act-of-war defense, we need not decide whether they would also be barred by the "third-party" defense.

12

attacks were not carried out by a state or a government. War, in the CERCLA context, is not limited to opposing states fielding combatants in uniform under formal declarations.[4]  At the same time, the district court wisely avoided a broad or categorical holding.  None was needed because the September 11 attacks were different in means, scale, and loss from any other terrorist attack.  Both coordinate branches of government expressly recognized the September 11 attacks as an act of war justifying military response, and these decisions are worthy of deference. Congress, in the immediate aftermath of 9/11, passed the Authorization for the Use of Military Force ("AUMF"), Pub. L. No. 107-40, 115 Stat. 224 (2001), which "constitute[d] the specific statutory authorization" necessary for the President to enter military hostilities abroad under the War Powers Act, 50 U.S.C. §§ 1541-1548, and "to use all necessary and proper force" against those responsible for the September 11 attacks.  Similarly, the President declared

_____

[4] We recognize that in the international law context, "war" has been traditionally defined "as a 'use of force or other action by one state against another' which '[t]he state acted against recognizes . . .  as an act of war, either by use of retaliatory force or a declaration of war.'"  Shell Oil, 294 F.3d at 1061 (quoting two international law treatises).

13

that the September 11 attacks were acts of war and treated them as such.  See Address Before a Joint Session of the Congress on the United States Response to the Terrorist Attacks of September 11, 37 Weekly Comp. Pres. Doc. 1347, 1347 (Sept. 20, 2011) ("On September 11th, enemies of freedom committed an act of war against our country.").

The Supreme Court has deferred to those acts and declarations of the other branches:

> [N]othing in our analysis turns on the admitted absence of either a formal declaration of war or a declaration of martial law.  Our focus instead is on the September 11, 2001, attacks that the Government characterizes as the relevant 'act[s] of war,' and on the measure that authorized the President's deployment of military force--the AUMF. . . . [W]e do not question the Government's position that the war commenced with the events of September 11, 2001 . . . .

Hamdan v. Rumsfeld, 548 U.S. 557, 599 n.31 (2006).  Like the district court, we need not decide whether other terrorist attacks constitute "act[s] of war" under CERCLA; the September 11 attacks fit the category without question.

This reading is not at odds with precedent that "act of war" is construed narrowly in insurance contracts.  See, e.g., Pan Am. World Airways, Inc. v. Aetna Cas. & Surety Co., 505 F.2d 989 (2d Cir. 1974).  The purpose of an all-risk insurance contract is to protect against any insurable

14

loss not expressly excluded by the insurer or caused by the insured. Id. at 1003-04 ("The experienced all risk insurers should have expected the exclusions drafted by them to be construed narrowly against them, and should have calculated their premiums accordingly."). A narrow reading of a contractual "act of war" exclusion thus achieves the parties' contractual intent, insulating the policyholder from loss. The remedial purpose of CERCLA is both different and unrelated.

Nor is our interpretation at odds with the Anti-Terrorism Act ("ATA"), 18 U.S.C. §§ 2331 et seq. The purpose of the ATA was "[t]o provide a new civil cause of action in Federal law for international terrorism that provides extraterritorial jurisdiction over terrorist acts abroad against United States nationals." H.R. 2222, 102d Cong. (1992). The statutory exception for an act of war defines it as "any act occurring in the course of--(A) declared war; (B) armed conflict, whether or not war has been declared, between two or more nations; or (C) armed conflict between military forces of any origin." 18 U.S.C. § 2331(4). Acts of war, then, are distinguished from acts of terrorism.

15

Cedar & Washington argues that we should import that distinction into the CERCLA context. However, the ATA is designed precisely to differentiate between acts of terrorism and acts of war, while CERCLA is silent as to terrorism. Indeed, in the CERCLA context, an event may be both an act of war and an act of terrorism; under the ATA regime, it may not. In addition, the "act[s] of war" defined in the two statutes differ geographically, because the ATA applies solely abroad, whereas CERCLA only applies domestically.

Given the manifestly distinct statutory text, structure, and remedial purposes of CERCLA and the ATA, we do not construe "act of war" to have the identical meaning in both statutes. See Gen. Dynamics Land Sys., Inc. v. Cline, 540 U.S. 581, 596 (2004) (reading language of ADEA in light of purpose of statute).

                              *    *    *

Because they were an "act of war," the September 11 attacks fall under CERCLA's exception if they were the "sole[]" cause of the alleged release. 42 U.S.C. § 9607(b). The sole cause standard certainly requires more than just

16

proximate and but for causation.  But it is satisfied here because the September 11 attacks overwhelmed all other causes, and because the "release" was unquestionably and immediately caused by the impacts.  See Rodgers, supra, at § 8.13 (characterizing the sole cause standard as a "formidable obstacle . . . allow[ing] escape from liability only where external events overwhelm and swamp the contributions of the defendant"); cf. Aegis Ins. Servs., Inc. v. 7 World Trade Co., L.P., 77 F.3d 166, 180 (2d Cir. 2013) (dismissing negligent design claim against owners of a building destroyed on 9/11 because given "severity of the cataclysm that engulfed lower Manhattan . . . , [i]t is simply incompatible with common sense and experience to hold that defendants were required to design and construct a building that would survive the events of September 11, 2001").

Cedar & Washington argues that the composition of the dust and flying debris would have been less harmful but for actions previously taken by the owners of the airplanes and the real estate.  This argument does not succeed in raising an issue of fact or a subject for discovery.  The refutation is found in the text of the statute.  The phrase "act of

17

war" is listed in parallel with "act of God," 42 U.S.C. § 9607(b); it is useful and sensible to treat the two kinds of events alike when it comes to showing causation. It would be absurd to impose CERCLA liability on the owners of property that is demolished and dispersed by a tornado. A tornado, which scatters dust and all else, is the "sole cause" of the environmental damage left in its wake notwithstanding that the owners of flying buildings did not abate asbestos, or that farmers may have added chemicals to the soil that was picked up and scattered.

## II

Cedar & Washington incurred costs removing the dust residues of the planes and the World Trade Center, and seeks common-law indemnification. "Implied, or common-law, indemnity is a restitution concept which permits shifting the loss because to fail to do so would result in the unjust enrichment of one party at the expense of the other." McCarthy v Turner Constr., Inc., 17 N.Y.3d 369, 375 (2011) (internal brackets omitted); see also City of New York v. Lead Indus. Ass'n, Inc., 644 N.Y.S.2d 919, 922-23 (1st Dep't 1996) ("The classic situation giving rise to a claim for

18

indemnity is where one, without fault on its own part, is held liable to a third party by operation of law . . . due to the fault of another."). Under New York law, an indemnitor must bear some fault for the damages suffered by the indemnitee, whether on account of negligence, equitable considerations, or statutory requirements. See Raquet v. Braun, 90 N.Y.2d 177, 183 (1997) ("The duty that forms the basis for the liability arises from the principle that 'every one is responsible for the consequences of his own negligence, and if another person has been compelled . . . to pay the damages which ought to have been paid by the wrongdoer, they may be recovered from him.'" (quoting Oceanic Steam Nav. Co. v. Compania Transatlantica Espanola, 134 N.Y. 461, 468 (1892)) (omission in original)). Thus a polluter who causes (or is obligated by statute to remediate) environmental contamination can be liable to another party who cleans it up. State v. Stewart's Ice Cream Co., 64 N.Y.2d 83, 86-88 (1984).

Here, the act-of-war defense bars the CERCLA claim, and Cedar & Washington does not identify any other basis for its claim of indemnification. Because no legal duty or equitable consideration obligated the defendants to

19

remediate WTC Dust from Cedar & Washington's building, this common law claim fails.

For the foregoing reasons, we affirm the judgment of the district court.