NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

AUG 30 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| GALLAGHER & KENNEDY, P.A., | No. 23-15938 |
| Plaintiff-Appellant, | D.C. No. 2:16-cv-04447-DAE-BGM |
| v. | |
| CITY OF PHOENIX, a political subdivision of the State of Arizona; et al., | MEMORANDUM* |
| Defendants-Appellees. | |

Appeal from the United States District Court
for the District of Arizona
David A. Ezra, District Judge, Presiding

Argued and Submitted August 12, 2024
San Francisco, California

Before: GRABER, CALLAHAN, and KOH, Circuit Judges.

Gallagher & Kennedy, P.A. ("G&K"), a law firm, seeks to recover $21.1

million in costs that it allegedly incurred in responding to the City of Phoenix,

Maricopa County, and Prudential Overall Supply's (collectively "City") release of

hazardous substances that contaminated the Roosevelt Irrigation District's ("RID")

groundwater wells. G&K filed the current cost recovery action under the

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), specifically 42 U.S.C. § 9607. The district court granted the City's motion for partial summary judgment, concluding that G&K did not "incur" the response costs as required under CERCLA and thus was unable to recover, and dismissed the case. G&K now appeals. We have jurisdiction under 28 U.S.C. § 1291. Reviewing de novo, *Brown v. Arizona*, 82 F.4th 863, 874 (9th Cir. 2023) (en banc), we affirm in part, reverse in part, and remand for further proceedings.

1.      CERCLA provides that "any person who accepts or accepted any hazardous substances for transport to disposal or treatment facilities, incineration vessels or sites selected by such person, from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for . . . any other necessary costs of response incurred by any other person consistent with the national contingency plan." 42 U.S.C. § 9607(a)(4)(B). The parties currently dispute only the third requirement for recovery, that a party "incur" a response cost.

G&K entered into an agreement with RID to manage the cleanup of the contaminated groundwater affecting RID's wells. To carry out the work, G&K entered into agreements with consultants, including Spinnaker Holdings, LLC; Synergy Environmental, LLC; and Errol L. Montgomery & Associates, Inc. (the "subcontractors"), to perform the investigation and work needed to address the

contamination. G&K now seeks to recover for six categories of costs which we group together generally as either (1) costs related to G&K's own time and resources expended on the cleanup effort or (2) costs related to either paid or pending invoices from the subcontractors.

G&K first asserts that it incurred recoverable costs related to its own expenditure of time and effort. Under its agreement with RID, G&K spent time overseeing and managing the cleanup actions at the contaminated site and was to be compensated on a contingency basis from moneys that the parties referred to as "Project Funds." The Project Funds were to be collected on behalf of RID from settlements with potentially responsible parties and from anticipated future proceeds from the sale of treated RID water, among other sources. The district court found that, because G&K agreed to be paid out of the Project Funds on a contingency basis, G&K had not "incurred" costs under CERCLA as G&K bore the risk of not receiving compensation in the event of insufficient Project Funds.

We disagree. In *Key Tronic Corp. v. United States*, 511 U.S. 809 (1994), the Supreme Court recognized that certain non-litigation attorney costs could be recovered under CERCLA. *See id.* at 820 (noting that the plaintiff had played a vital role by "[t]racking down other responsible solvent polluters," which "increases the probability that a cleanup will be effective and get paid for"). Under *Key Tronic*, an entity that conducts non-litigation activity that is "closely tied to the

3

actual cleanup," *id.*, can be entitled to reimbursement for that entity's "commitment of resources" to the cleanup effort, *In re Dant & Russell, Inc.*, 951 F.2d 246, 249 (9th Cir. 1991). Even though G&K itself did not undertake the physical cleanup work, to the extent that G&K has incurred non-litigation related costs in the form of its own time and effort, those costs may be reimbursable consistent with *Key Tronic*. G&K's contingent fee agreement with RID has no bearing on the question of whether it committed resources to activities that were closely tied to the cleanup. We remand for the district court to determine whether G&K has met the additional requirements to recover under 42 U.S.C. § 9607.

Regarding G&K's claimed costs related to paid and unpaid invoices to the subcontractors who performed the actual cleanup work, however, we agree with the district court that G&K has not shown that it incurred those costs. All payments to the subcontractors for work performed was contingent on the existence of sufficient Project Funds to pay the invoices. G&K does not dispute that it did not contribute firm money to the Project Funds. To the extent that G&K now seeks to be reimbursed for payments from the Project Funds already made to the subcontractors, those are not costs that G&K incurred but, rather, are costs G&K reimbursed to others who undertook and incurred costs for the cleanup activity. *See Chubb Custom Ins. Co. v. Space Systems/Loral, Inc.*, 710 F.3d 946, 964 (9th Cir. 2013) ("Chubb has not incurred response costs solely by virtue of

4

reimbursing [other's] response costs . . .").  To the extent that G&K seeks to be reimbursed for costs reflected in pending invoices, G&K's legal obligation to pay those invoices is contingent on the future availability of sufficient Project Funds. This contingent obligation is too speculative to qualify as an incurred cost.  *See Trimble v. ASARCO, Inc.*, 232 F.3d 946, 958 (8th Cir. 2000) ("[T]he mere possibility, even the certainty, that an obligation to pay will arise in the future does not establish that a cost has been incurred[.]"), *abrogated on other grounds by Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 549–51 (2005); *In re Dant & Russell*, 951 F.2d at 249 (stating that CERCLA does not allow recovery when "there has been no commitment of resources for meeting th[o]se costs"); *ASARCO LLC v. Atl. Richfield Co., LLC*, 975 F.3d 859, 866 (9th Cir. 2020) (noting that "speculative, potential future response costs are not recoverable . . .").  We affirm the district court's dismissal as to the subcontractor costs.

**2.**      G&K argues that the City should be judicially estopped from (1) stating that G&K did not "incur" the response costs, contrary to its position in prior litigation with RID; and (2) asserting that G&K cannot recover amounts owed to the subcontractors, contrary to its position in prior litigation with a subset of those subcontractors.  The record does not support G&K's arguments.

Judicial estoppel requires both that a party has taken a certain position and that the party succeeded in persuading a court to accept the position.  *See New*

5

*Hampshire v. Maine*, 532 U.S. 742, 749–50 (2001).  G&K states that in prior litigation with RID, *RID v. Salt River Project Agricultural Improvement and Power District*, 222 F. Supp. 3d 757 (D. Ariz. 2016), the City argued that G&K had incurred the response costs.  Although the City did argue that G&K, rather than RID, might be a proper party to recover, the City did not concede that G&K was a proper party for all those costs.  Rather, the City argued that RID *did not* incur the costs, not that G&K *did*.  In fact, the district court explicitly noted that it "did not make any ruling as to whether G&K actually incurred the response costs, only that the costs were paid out of Project Funds by G&K acting on behalf of RID." [1]  Thus, the court did not accept an argument that G&K "incurred" the costs of the cleanup as the term is used under the CERCLA.

Similarly in the litigation with the subcontractors, *Spinnaker Holdings, LLC v. City of Phoenix*, 2:16-cv-04448-PHX-DAE-BGM (D. Ariz.), the City did not take a position that G&K was the proper party to recover funds owed to the subcontractors.  Rather, the City argued that the subcontractors' claims were not ripe, which is not inconsistent with its current position that G&K did not incur the subcontractors' costs.  Additionally, that lawsuit was dismissed voluntarily, and therefore there was no judicial acceptance of any position that the City might have

[1]    We agree with the district court's characterization because it was not being asked at that time to evaluate G&K's costs, and "had not had the opportunity to consider the evidence brought forth in the instant motion." ***Id.***

6

raised. Accordingly, the City is not estopped from raising its arguments against G&K.

**3.** Finally, the City also challenges G&K's standing to bring this action. The City argues that G&K has not suffered a concrete or particularized injury, citing *Price Trucking Corp. v. Norampac Industries, Inc.*, 748 F.3d 75 (2d Cir. 2014), to argue that G&K cannot bring a claim on behalf of a subcontractor. Neither argument is persuasive.

Regarding Article III standing, and accepting the allegations in the complaint as true, G&K has asserted a sufficient injury to meet the standing requirements. G&K's allegations that it suffered an economic harm when it lost money related to its own actions to implement its agreement with RID and its alleged obligation to pay the pending invoices suffice to meet this requirement. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (explaining that, to establish standing, plaintiffs must show that they suffered an "injury in fact" with a "causal connection between the injury and the conduct complained of" such that the injury will "likely. . . be redressed by a favorable decision" (internal quotations and citations omitted)).

As to whether G&K can bring a claim on behalf of the subcontractors, the parties rely on different interpretations of *Price Trucking*. There, the Second Circuit addressed "whether CERCLA creates direct liability between owners and

7

subcontractors with respect to cleanup on a CERCLA site when the owner has paid a general contractor in full for the subcontractor's work." *Price Trucking*, 748 F.3d at 79. The Second Circuit held that it did not. However, to the extent that G&K is arguing that subcontractor cost-recovery suits must be brought by the general contractor, G&K overreads *Price Trucking*, which explicitly declined to address whether there might be a different circumstance in which a subcontractor could bring a CERCLA cost-recovery action. *See id.* at 77, 85 (noting that the "sole question presented on appeal is whether CERCLA grants the subcontractor a right of recovery against the landowner in these circumstances" and that "we need not decide and do not imply a view as to whether there may be cases in which a cleanup contractor or subcontractor could successfully bring a cost-recovery action"). In any event, G&K still must meet CERCLA's requirement that it incurred the costs for which it seeks to be reimbursed. As to the payments made or owed to the subcontractors, G&K did not incur those costs. Therefore, we affirm the district court's dismissal of this theory on that ground.

We **AFFIRM** in part and **REVERSE** in part, and **REMAND** to the district court for further proceedings consistent with this disposition.[2]

---

[2] The parties shall bear their own costs on appeal.